AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)   ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| United States of America<br><br>v.<br><br>KEANDRE LOWE,<br><br>Defendant(s) | Case No. 2:25-mj-02307-DUTY |

LODGED CLERK, U.S. DISTRICT COURT 4/17/25 CENTRAL DISTRICT OF CALIFORNIA BY: MRV DEPUTY

FILED CLERK, U.S. DISTRICT COURT 04/17/2025 CENTRAL DISTRICT OF CALIFORNIA BY: GR DEPUTY

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of January 22, 2025 in the county of Los Angeles in the Central District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1040 | Fraud in Connection with Major Disaster or Emergency Benefits |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/ Michael Jia
Complainant's signature

Michael Jia, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: April 17, 2025

*Judge's signature*

City and state: Los Angeles, California

Hon. Karen Stevenson, Chief U.S. Magistrate Judge
*Printed name and title*

AUSA: S. Arkow x6975

**AFFIDAVIT**

I, Michael Jia, being duly sworn, declare and state as follows:

## I. BACKGROUND OF AFFIANT

1. I am a Special Agent with the U.S. Department of Homeland Security-Office of Inspector General ("DHS-OIG") in Los Angeles, California and have been since August 2018. I am a law enforcement officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18 of the United States Code.

2. I have successfully completed a fifty-nine-day Criminal Investigator Training Program at the Federal Law Enforcement Training Center, in Glynco, Georgia. This training included instruction on criminal investigations, investigative information sources and financial analysis.

3. I have conducted financial analysis of bank/financial account statements and transactions associated to numerous financial fraud investigations. In addition, I have participated in criminal investigative activities including physical surveillance, digital forensic analysis of digital devices, search warrants, arrests, telephone records analysis, witness interviews, and subject interviews.

## II. PURPOSE OF AFFIDAVIT

4. This affidavit is made in support of a criminal complaint against, and arrest warrant for, KEANDRE LOWE ("LOWE"), also known as ("aka") "Keandre Emmanuel Joshua Lowe," aka "Keandre Emmanuel Lowe," aka "Keandre J Lowe," for a

violation of 18 U.S.C. § 1040 (Fraud in Connection with Major Disaster or Emergency Benefits).  This affidavit is also made in support of a warrant to search the person of LOWE (the "SUBJECT PERSON"), as described more fully in Attachment A.

5.   The requested search warrant seeks authorization to seize evidence, fruits, or instrumentalities of violations of 18 U.S.C. §§ 287 (False Claims), 1028A (Aggravated Identity Theft), 1040 (Fraud in Connection with Major Disaster or Emergency Benefits), and 1343 (Wire Fraud) (the "Subject Offenses"), as described more fully in Attachment B.  Attachments A and B are incorporated herein by reference.

6.   The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and does not purport to set forth all my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### III. SUMMARY OF PROBABLE CAUSE

7.   An investigation conducted by DHS-OIG has revealed that LOWE submitted a fraudulent application to the Federal Emergency Management Agency ("FEMA") for disaster relief benefits associated with wildfires that destroyed a large number of structures (and caused other damages) in the Los Angeles area in January 2025.  In the application, LOWE claimed that he resided

at 1860 Homewood Drive, Altadena, California 91001 (the "1860 Homewood Drive Address"). As discussed below, the investigation to date has not uncovered any evidence that LOWE ever owned, rented, or lived at the 1860 Homewood Drive Address. Instead, according to property records and an interview with the owner of 1860 Homewood Drive, the owner lived at the address at the time of fires and did not know LOWE. LOWE, on the other hand, appears to actually live in Long Beach, California.

### IV. STATEMENT OF PROBABLE CAUSE

#### A. The California Wildfires

8. As was reported in numerous international, national and local media reports, in early January 2025, a series of destructive wildfires (the "California Wildfires") spread throughout the Los Angeles metropolitan area in California. These fires cumulatively burned nearly 60,000 acres of land, killed 29 people, forced more than 200,000 people to evacuate, and destroyed more than 16,000 structures. The largest of these fires were the Eaton and Palisades wildfires, which are second and third most destructive wildfires in California history.

9. Based on my review of a "4856-DR-CA-Initial Notice" provided by Federal Emergency Management Agency ("FEMA"), I know that on January 8, 2025, President Biden approved a Major Disaster Declaration for California in response to the California Wildfires under the authority of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. 5121 et seq.

10. From my involvement in this investigation, I know that FEMA is an agency within the U.S. Department of Homeland Security ("DHS"). FEMA's primary purpose is to coordinate the response to a disaster that has occurred in the United States and that overwhelms the resources of local and state authorities. In response to the California Wildfires, FEMA made available a program to provide financial assistance to affected individuals and families. Affected persons could apply for assistance online, with the FEMA mobile application, applying at a disaster relief center or by calling the FEMA Helpline. Victims of the California Wildfires, including renters who lost their rental residences, could qualify for a one-time payment of $750 noted as a FEMA relief payment, $43,600 for other needs assistance (personal property, transportation, medical, etc.), and housings assistance for up to 18 months at varying rates (1BR $2,081, 2BR $2,625, 3BR $3,335, 4BR $3,698). Homeowners are also potentially eligible for additional relief up to $43,600 for home repair.

    **B.    LOWE's Submission of a Fraudulent Claim for FEMA Benefits related to the California Wildfires**

11. On February 6, 2025, DHS-OIG received notification from FEMA regarding a claim for federal disaster assistance (the "Application") for a damaged dwelling located at the 1860 Homewood Drive Address. The Application indicated that the 1860 Homewood Drive Address was a rental property damaged in the California Wildfires, the damaged dwelling was a primary residence, and the registration ID of the Application was 61-

6534427 (the "Registration ID"). The Application sought disaster relief associated with the California Wildfires.

12. According to FEMA records, on January 22, 2025, the Application for federal disaster assistance was submitted over the telephone, listing the 1860 Homewood Drive Address[1] as the purportedly damaged dwelling that LOWE claimed to rent and live in as his primary residence. The Application identified LOWE as the applicant with a social security number ending in 9604 and date of birth of April 27, 2003, using the primary cellular telephone (310) 954-6223 (the "6223 Number"). As noted below, the social security number and date of birth used in the Application correspond to LOWE's actual personal identifying information based on law enforcement databases.

13. Beginning January 28, 2025, after approving the Application, FEMA sent the following payments via electronic funds transfer: (a) January 28, 2025 a disbursement of $770 for initial payment; (b) February 3, 2025 disbursements of $16,298.07 for personal property damages and $3,822 for other assistance; and February 13, 2025 a disbursement of $7,396 for rental assistance, to a Sutton Bank checking account ending in 2094 (the "Sutton 2094 Account"), which was the account listed in the Application for receipt of any funds disbursed.

14. According to a map of areas damages by the Eaton Fire, the 1860 Homewood Drive Address was destroyed as a result of the Eaton Fire.

---

[1] According to the Los Angeles County assessor, this address has been owned by L.M. and K.M. since 2007.

15. I obtained the checking account information from Sutton Bank for the Sutton 2094 Account, and the above-described funds were directly deposited into that account. The Sutton 2094 Account is registered to LOWE. The customer information provided by Sutton Bank on the Sutton 2094 Account lists LOWE under "user details" with the same date of birth and social security number used on the Application for LOWE.

16. As set forth in more detail below, information obtained during the investigation indicates the Application included materially false statements. This information includes the following:

    a. As described further below, the actual property owners of the 1860 Homewood Drive Address are L.M. and K.M. L.M. confirmed to me that since 2007 she has not rented the property out and was residing at the property at the time of the fires.

    b. The mailing address listed on the Application for LOWE was 451 E 55th Street, Apartment 9, Long Beach, California 90805 (the "451 E 55th Street Address"). According to U.S. postal records, on January 30, 2025, LOWE changed his address from 1019 Cedar Avenue, Apartment 4, Long Beach, California 90813,[2] to the 451 E 55th Street Address. According to U.S. postal records, on January 20, 2025 an individual, Ronlonda Hicks, changed her address from 1019 Cedar Avenue, Apt 4, Long Beach, California 90813, to the 451 E 55th Street Address. In

---

[2] According to records of the California DMV, the mailing address for LOWE is 1019 Cedar Avenue, Apartment 4, Long Beach, California 90813.

addition, mail addressed to Ronlonda Hicks has been sent to the 451 E 55th Street Address during the period from December 25, 2024 to April 2, 2025. According to bank records, Ronlonda Hicks sent and received funds through multiple Zelle transactions into and from a SchoolsFirst Federal Credit Union account belonging to LOWE beginning in January 2024 through March 2024. SchoolsFirst Federal Credit Union records show that LOWE is the sole account holder of that account and his date of birth and social security number on this bank account match those provided on the Application.

   c. According to law enforcement databases, the social security number and date of birth listed on the Application match those for LOWE, and LOWE's date of birth and personal description from his California DMV records is detailed in Attachment A.

   d. According to Cox Communication records, the Application was accessed from several different internet protocol ("IP") addresses between February 10, 2025 and February 20, 2025. The subscriber and account/service information associated with the above-referenced IP addresses return to account number ending 9114, with an account start date on February 7, 2025, in the name of Darnise Lowe, 7117 Old Village Ave, Las Vegas, Nevada 89129, (951) 622-7229 (the "7229 Number"), with an email address of lowedarnise@gmail.com.

   e. According to Verizon records, the Application was accessed from several different internet IP addresses between January 25, 2025 and February 4, 2025. The subscriber

and account/service information associated with the above-referenced IP addresses return to account number ending 5234-1, with an account start date on January 7, 2025, in the name of Darnise Lowe, 7177 Old Village Ave, Las Vegas, Nevada 89129, (the "7229 Number"). According to California Department of Motor Vehicle ("DMV") records, Darnise Lowe's California driver license, issued on October 27, 2022, shows an address of 806 E Avenue J10 Lancaster, CA 93535 (the "Lancaster Address"). According to law enforcement databases, the Lancaster Address is also associated with LOWE from February 2012 through January 2025.

    f. As mentioned above, the phone number listed on the Application is the 6223 Number, and T-Mobile records for the 6223 Number show that the "name associated with this telephone number" is LOWE, and the subscriber name as the person to be billed is Darnise Smith. According to T-Mobile call records, on January 22, 2025 the 6223 Number received text messages from 78008. A Google query identified text messages from 78008 originate for login.gov. At and around the time the 6223 Number received text messages from 78008 on January 22, 2025, the 6223 Number received incoming calls from the telephone numbers (951) 622-7229 and (323) 500-8885 which, according to law enforcement databases, are associated with, respectively, Darnise Lowe and Ronlonda Hicks. As noted below, I was able to speak with LOWE on April 2, 2025 when calling the 6223 Number. When I called the 6223 Number, I identified myself as a FEMA contractor and stated that I was looking for Keandre Lowe. The male individual

who answered the phone responded that he was LOWE and confirmed that he was the one who applied for disaster relief benefits, which is described in greater detail below.

17. I obtained a true and certified copy of the real estate deed from the Los Angeles County Registrar – Recorder/County Clerk for the 1860 Homewood Drive Address. According to those records, the 1860 Homewood Drive Address is owned by L.M. and K.M.

    C.    **Interview of L.M.**

18. On March 31, 2025, I, along with another federal agent, conducted a telephonic interview of L.M. L.M. stated that she did not apply for FEMA benefits, and she did not give anyone permission to apply for FEMA benefits on her behalf. L.M. owned and lived at the 1860 Homewood Drive Address since 2007 and never rented out the residence. L.M. never had the email address identified on the Application (which is LOWEK0443@gmail.com) or the 6223 Number and she stated that she does not know anyone by the name Keandre Lowe. L.M. never had a mailing address of the 451 E 55th Street Address and does not have a bank account with Sutton Bank.

    D.    **Recorded Calls with LOWE**

19. On April 2, 2025, I dialed the 6223 Number and introduced myself as a FEMA contractor and stated that I was looking for Keandre Lowe. The male individual who answered the phone responded that he was LOWE and confirmed that he was the one who applied for disaster relief benefits. I told LOWE that I was contacting him because his FEMA application was locked,

and I could help unlock the account. LOWE stated he received one FEMA fund disbursement for rental assistance and was told by FEMA that he was going to receive about $3,700 in rental assistance every two to three months. When I asked for the FEMA application registration ID, Lowe asked if that is the number he used when using the hotel vouchers. After I confirmed, Lowe then proceeded to recite the Registration ID. LOWE stated he no longer has the bank account he initially put on the Application and provided an updated bank account. When I asked if the email address LOWEK0443@gmail.com is still a good email address, LOWE requested the email address be updated to KLOWETV@gmail.com. LOWE confirmed his telephone number as the 6223 Number, the damaged residence as the 1860 Homewood Drive Address, and his current mailing address as the 451 E 55th Street Address.

20. Immediately after the call ended, I received a call back from the 6223 Number. The caller identified himself as Keandre Lowe and stated the amount of rental assistance FEMA said he would receive every two to three months is $6,000.

21. DHS-OIG investigators identified a Trusted Worker Application[3] ("TWA Application") submitted on June 11, 2024, under the name of LOWE. The TWA listed LOWE's social security number, date of birth, the 6223 Number, and the email address KLOWETV@gmail.com.

---

[3] The TWA is submitted as part of the Trusted Worker Program, which is a new Customs and Border Protection ("CBP") program that streamlines the application process for aviation workers requiring access to the CBP Federal Inspection Services areas at airports.

**E.  LOWE's Use of a Digital Device and Probable Cause that Evidence, Fruits, and Instrumentalities of the Subject Offenses Will be Found on LOWE and Digital Devices in His Control**

22. The Application listed the 6223 Number as a contact number for LOWE and the email address LOWEK0443@gmail.com.

23. According to FEMA records:

   a. On January 22, 2025, an application to FEMA to register for disaster relief funds was submitted over the phone.

   b. On January 24, 2025, a FEMA contract inspector entered a comment in the FEMA case review stating: "Residency verified by Landlord=Contract Lease." I interviewed FEMA Inspector Janette Garcia who stated she did not have a specific independent memory at the time I spoke to her of verifying the residency for this specific Application, or whether someone showed her a lease or she spoke to someone who claimed to be the applicant or owner of the property.

   c. On February 3, 2025, someone who purported to be the applicant called FEMA to check on the status of payment and was advised that she should receive those funds soon.

   d. On February 13, 2025, someone who purported to be the applicant called FEMA and stated she was approved for rental assistance and asked the FEMA representative for a date for disbursement of benefits. The FEMA representative confirmed the approval but could not provide a date.

24. According to Verizon records, on February 3, 2025, four calls were placed from the 7229 Number to FEMA at (800)

621-3362, and on February 13, 2025 two calls were placed from the 7229 Number to FEMA at (800) 621-3362.

25. On March 21, 2025, I reviewed the records provided by Google associated with the email address listed on the Application, LOWEK0443@gmail.com, and learned the following:

    a. LOWE has been the subscriber on the email account as of January 22, 2025 when the Gmail account was created.

    b. Emails found in the Gmail account contained email headers from DHS and FEMA, including on January 22, 2025, the day the Application was submitted, and in the days and weeks following the submission of the Application.

26. Based on my training and experience, I understand that individuals involved in illegal activities, such as the Subject Offenses, may use digital devices, including cellular telephones, to further their illegal schemes.

27. I understand from my training experience that individuals committing financial crimes often use and maintain personal digital devices to store information about their crimes during and long after the crimes have been committed. This information includes logs of transactions or browsing history; call logs; copies of documents submitted electronically; copies of applications for government benefits; records of funds received; information regarding individuals and companies that have been victimized; records of payments to or from co-conspirators; and victim profiles.

28. I understand individuals who commit financial crimes often access financial account information using their personal

digital devices, including through applications offered by financial institutions, and these devices will store records concerning their finances and financial transactions, sometimes for substantial periods long after they are last accessed. I understand individuals who commit financial crimes will often liquidate criminal proceeds to cash or cash equivalents (such as jewelry or precious metals), as well as using criminal proceeds to purchase or finance automobiles, real estate, and other types of property and assets, in order to launder the proceeds, to make the proceeds more difficult to trace, and to profit from the criminal activity.  Information concerning a subject's finances, including expenditures and purchases, and other financial information concerning income and work activity, is also evidence of criminal activity to the extent that persons involved in criminal activity do not have legitimate sources of income to support expenditures and purchases.

## V. TRAINING AND EXPERIENCE ON DIGITAL DEVICES[4]

29.  Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that the following electronic evidence, inter alia, is often retrievable from digital devices:

---

[4] As used herein, the term "digital device" includes any electronic system or device capable of storing or processing data in digital form, including central processing units; desktop, laptop, notebook, and tablet computers; personal digital assistants; wireless communication devices, such as paging devices, mobile telephones, and smart phones; digital cameras; gaming consoles; peripheral input/output devices, such as keyboards, printers, scanners, monitors, and drives; related communications devices, such as modems, routers, cables, and connections; storage media; and security devices.

a. Forensic methods may uncover electronic files or remnants of such files months or even years after the files have been downloaded, deleted, or viewed via the Internet. Normally, when a person deletes a file on a computer, the data contained in the file does not disappear; rather, the data remain on the hard drive until overwritten by new data, which may only occur after a long period of time. Similarly, files viewed on the Internet are often automatically downloaded into a temporary directory or cache that are only overwritten as they are replaced with more recently downloaded or viewed content and may also be recoverable months or years later.

b. Digital devices often contain electronic evidence related to a crime, the device's user, or the existence of evidence in other locations, such as, how the device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents, programs, applications, and materials on the device. That evidence is often stored in logs and other artifacts that are not kept in places where the user stores files, and in places where the user may be unaware of them. For example, recoverable data can include evidence of deleted or edited files; recently used tasks and processes; online nicknames and passwords in the form of configuration data stored by browser, e-mail, and chat programs; attachment of other devices; times the device was in use; and file creation dates and sequence.

c. The absence of data on a digital device may be evidence of how the device was used, what it was used for, and

who used it.  For example, showing the absence of certain software on a device may be necessary to rebut a claim that the device was being controlled remotely by such software.

   d. Digital device users can also attempt to conceal data by using encryption, steganography, or by using misleading filenames and extensions.  Digital devices may also contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed.  Law enforcement continuously develops and acquires new methods of decryption, even for devices or data that cannot currently be decrypted.

  30. Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that it is not always possible to search devices for data during a search of the premises for a number of reasons, including the following:

   a. Digital data are particularly vulnerable to inadvertent or intentional modification or destruction.  Thus, often a controlled environment with specially trained personnel may be necessary to maintain the integrity of and to conduct a complete and accurate analysis of data on digital devices, which may take substantial time, particularly as to the categories of electronic evidence referenced above.  Also, there are now so many types of digital devices and programs that it is difficult to bring to a search site all of the specialized manuals, equipment, and personnel that may be required.

   b. Digital devices capable of storing multiple gigabytes are now commonplace.  As an example of the amount of

data this equates to, one gigabyte can store close to 19,000 average file size (300kb) Word documents, or 614 photos with an average size of 1.5MB.

    31. The search warrant requests authorization to use the biometric unlock features of a device, based on the following, which I know from my training, experience, and review of publicly available materials:

        a. Users may enable a biometric unlock function on some digital devices. To use this function, a user generally displays a physical feature, such as a fingerprint, face, or eye, and the device will automatically unlock if that physical feature matches one the user has stored on the device. To unlock a device enabled with a fingerprint unlock function, a user places one or more of the user's fingers on a device's fingerprint scanner for approximately one second. To unlock a device enabled with a facial, retina, or iris recognition function, the user holds the device in front of the user's face with the user's eyes open for approximately one second.

        b. In some circumstances, a biometric unlock function will not unlock a device even if enabled, such as when a device has been restarted or inactive, has not been unlocked for a certain period of time (often 48 hours or less), or after a certain number of unsuccessful unlock attempts. Thus, the opportunity to use a biometric unlock function even on an enabled device may exist for only a short time. I do not know the passcodes of the devices likely to be found in the search.

   c. Thus, the warrant I am applying for would permit law enforcement personnel to, with respect to any device that appears to have a biometric sensor and falls within the scope of the warrant: (1) depress LOWE's thumb and/or fingers on the device(s); and (2) hold the device(s) in front of LOWE's face with her eyes open to activate the facial-, iris-, and/or retina-recognition feature.

  32. Other than what has been described herein, to my knowledge, the United States has not attempted to obtain this data by other means.

## VI. REQUEST FOR SEALING

  33. It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of these applications, including the application and the complaint and search warrant affidavit. I believe that sealing is necessary because the items and information to be seized is relevant to an ongoing investigation into criminal conduct involving LOWE who is unaware that they are being investigated. In addition, some of her suspected criminal activity may have been facilitated by other co-conspirators. Disclosure of the complaint and search warrant affidavit at this time would seriously jeopardize the investigation, as such disclosure may provide an opportunity to destroy evidence, change patterns of behavior, or allow flight from prosecution. Premature disclosure of the contents of this affidavit and related documents may have a significant and

negative impact on this continuing investigation and may severely jeopardize its effectiveness.

## VII. <u>CONCLUSION</u>

34. For all the reasons described above, there is probable cause to believe that evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 1040 (Fraud in connection with a Natural Disaster and Emergency benefits), as described above and in Attachment B of this affidavit, will be found in a search of the LOWE, as further described above and in Attachment A.

35. For all the reasons described above, there is probable cause to believe that LOWE violated 18 U.S.C. § 1040 (Fraud in Connection with Major Disaster or Emergency Benefits).

MICHAEL JIA
Special Agent
Department of Homeland Security
Office of Inspector General

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 17th day of April, 2025.

*Karen L. Stevenson*
HONORABLE KAREN STEVENSON
UNITED STATES MAGISTRATE JUDGE